**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No: 1:19-cv-03116-WJM-SKC

ALBERT PERRY,

    Plaintiff,

v.

AUTO OWNERS INSURANCE COMPANY, a foreign corporation,

    Defendant.

___

**JOINT DISCOVERY BRIEF REGARDING**
**DEPOSITION OF CHARLES BAIN**
___

The parties, by and through undersigned counsel, hereby submit this Joint Discovery Brief Regarding Deposition of Charles Bain, pursuant to the Court's minute order dated August 13, 2020 (Doc. 35), as follows:

### I.  Plaintiff's Statement of the Dispute.

Plaintiff Albert Perry respectfully requests that the Court enter an order compelling Charles Bain, a retained expert witness in this matter, to answer certain questions to which he refused to respond at his deposition held on July 31, 2020. Specifically, Perry seeks an answer to the question of who the shareholders, other than Bain, are of the company that employs him, Biodynamic Research Corporation ("BRC")? Tr., Dep. of Charles Bain, Jul. 31, 2020, at 8:20-11:6, attached hereto as **Exhibit 1**.

Bain has been retained by Defendant Auto Owners Insurance Company ("Auto Owners") to render opinions regarding Perry's injuries sustained in the automobile collision that is at the

heart of this underinsured motorist ("UIM") benefits breach of contract and bad faith case. Generally speaking, his opinions are that Perry did not sustain the injuries he claims. Bain is an employee of BRC, which is a company that Auto Owners, often through Gregory Giometti, Esq., frequently relies upon to render opinions similar to that which Bain has rendered in this case. Bain recalls that Giometti has retained him at least twenty times. *Id.* at 14:18-15:1. BRC is a collective of professional expert witnesses. *E.g.*, "About," BRC, *available at* https://brconline.com/about/. The "services" BRC advertises include rendering expert witness opinions in the areas of accident reconstruction, biomechanics, and injury causation analysis. "Services," BRC, *available at* https://brconline.com/services/injury-causation-analysis/. BRC advertises that, in determining "how injuries occur" for the purpose of "legal disputes," its work involves "determining whether an injury occurred as alleged – or whether it occurred at all." "Injury Causation Analysis," BRC, *available at* https://brconline.com/services/injury-causation-analysis/. In other words, BRC's work is ordinarily about disputing causation in an automobile case.

Given the number of times that Bain himself has testified for defendants, including for Giometti and Auto Owners, as well as the purpose and mission of BRC, there is a serious potential that Bain is biased in favor of defendants in auto collision cases and/or their insurers, including Auto Owners. At a minimum, Plaintiff is entitled to discover information that may support the idea that Bain has a bias in favor of Auto Owners. *E.g.*, *Chavez v. Marten Transport, Ltd.*, Civ. 10-0004 MV/KBM, 2011 WL 13112997, at *1 (D.N.M. Aug. 15, 2011) (holding that "financial information about BRC" and Bain's "personal tax or other financial information . . . may be obtained in a

deposition or by Dr. Bain's sworn statement").[1] As one court explained, concerns that an expert witness may be a "hired gun" have "led courts to open the door to the opposing party to obtain information from experts beyond that provided in Rule [26](a)(2)(B), including financial information that would indicate their lack of impartiality and their bias in favor of the hiring party." *Id.* (quoting *Campos v. MTD Products, Inc.*, No. 2-07-0029, 2009 WL 920337, at *3-4 (M.D. Tenn. Apr. 1, 2009)).

Yet, at his deposition, Bain refused to provide an answer to Plaintiff's counsel as to who the shareholders of BRC are. Plaintiff is entitled to discover this information so that he may ascertain any biases Bain may hold that have prevented him from rendering fair and impartial opinions in this matter. Plaintiff seeks this information in order to determine whether there is evidence of bias in the company itself that may be fairly attributed to Bain in this case. For example, if one of the shareholders of BRC is a representative of or has a relationship with the insurance industry, or even Auto Owners itself, that would tend to show that Bain has an allegiance to Auto Owners that could have influenced his opinions rendered in this matter. Even without such a direct relationship, it may be that BRC is comprised of shareholders whose background and experience evidence bias baked into the company such that Bain himself was unduly influenced in rendering his opinions here. For instance, if every shareholder performs

---

[1] Defendant cites this case for the proposition that Bain is not required "to provide financial information about BRC, nor . . . his personal tax or other financial information." *Infra*, 7 n. 4. In the next sentence of the opinion, which Defendant omits from its discussion, the court held that the same information "may be obtained in a deposition." *Chavez*, 2011 WL 13112997, at *1. As the instant discovery dispute is about deposition testimony, and not document production, Plaintiff's quotation of that portion of the opinion is not only accurate, but also relevant. In contrast, Defendant's quotation, read out of context, creates the impression that the *Chavez* court did not permit discovery at all into Bain's financial information, which is not what the case says.

as much defense work as Bain does, the jury may determine that the entire company is designed to support insurers' (like Auto Owners) claims denials. In that case, the jury may further determine that Bain's opinions rendered here are not credible because they align with the de facto mission of BRC to support insurers' denial of injury claims.

That Bain's refusal to identify the other shareholders of BRC is unfounded is evidenced by the fact that Auto Owners' counsel did not object to the question, nor did she assert a privilege or instruct the witness not to answer.[2] **Exhibit 1** at 8:20-11:23. Auto Owners' counsel did not move to terminate or limit the deposition. *Id.* Without such a motion, Bain was obligated to answer the question and it was entirely improper for him to refuse to. First, even if Auto Owners' counsel had objected, "the testimony [should have been] taken subject to any objection." Fed. R. Civ. P. 30(c)(2). Second, even if Auto Owners' counsel had instructed the witness not to answer—which she did not—that would only have been proper if she asserted a privilege, if there were an existing court order, or if she did so in order to present a motion to terminate or limit as provided in Fed. R. Civ. P. 30(d)(3). *Id.* There having been no objection made on the record and no motion to terminate or limit made, Bain was obligated to answer the deposition questions and the Court should order him to do so.

## II.     Defendant's Statement of Dispute.

Charles Bain, MD is an engineering-trained physician employed at Biodynamic Research

---

[2] There appears to be a dispute about whether Auto Owners' counsel objected to the question or not. Plaintiff's counsel's belief that the question was not objected to is supported by a multi-question exchange during which there was no objection to the direct question of who the shareholders are. **Exhibit 1** at 10:1-10. Presumably Defendant predicates its position that there was an objection on two form objections to subsequent questions. *Id.* at 10:11-11:6. Undoubtedly, there was no instruction not to answer from counsel.

Corporation ("BRC"), a privately-held corporation, whom Auto-Owners disclosed as a retained expert in this matter. After serving an 11-part subpoena *duces tecum* demanding Dr. Bain's confidential financial information and client files for the past decade,[3] and deposing Dr. Bain for over three hours, Plaintiff now seeks to reopen Dr. Bain's deposition to ask for the identity of BRC's shareholders and its board of directors.[4] Plaintiff claims this list of names is necessary to determine whether an insurance company or insurance lawyer hold any shares in BRC, so that he can evaluate Dr. Bain's credibility as an expert witness. Plaintiff, however, never asked Dr. Bain whether BRC is owned by any insurance companies or insurance lawyers. Plaintiff chose not to utilize the full and fair opportunity he already received to obtain the information he believes is relevant to Dr. Bain's credibility, while still preserving the privacy of individual shareholders who have nothing to do with this litigation.

Plaintiff's request to reopen Dr. Bain's deposition to ask for a list of names of BRC's board of directors and shareholders should be denied for three reasons. First, the list of names Plaintiff seeks is not relevant to any party's claims or defenses in this case. Fed. R. Civ. P. 26(b)(1). At issue in this action are Plaintiff's breach-of-contract claim for underinsured motorist ("UIM") benefits arising from a motor vehicle accident and claims for unreasonable delay and denial of insurance benefits and common law bad faith related to Auto-Owners' handling of the UIM claim. Auto-Owners retained Dr. Bain to opine on the nature and extent of Mr. Perry's injuries from the subject

---

[3] The subpoena demands work-product protected documents, all of Dr. Bain's communications with another doctor over the past ten years, all documents relating to Dr. Bain's retention and payment by a particular attorney over the past ten years, ten-years' worth of expert reports, and case lists and court orders relating to Dr. Bain going back forever.

[4] Dr. Bain testified that he only knows the names of the shareholders who are on the board of directors at BRC.

accident. Auto-Owners' disclosure of Dr. Bain as a retained expert in this case complied with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). Plaintiff has not even attempted to show that the identities of BRC's board of directors and shareholders are relevant to the claims or defenses of any party, which is the bare minimum requirement for discovery of any given information. Fed. R. Civ. P. 26(b)(1).

Second, instead of showing relevance to the claims or defenses, Plaintiff contends that the information sought may somehow bear on whether Dr. Bain is credible. But Plaintiff fails to show that the information sought is necessary for that purpose, or that a list of names would even be helpful to assessing Dr. Bain's credibility. While some discovery for potential impeachment purposes may be appropriate, "[d]iscovery should be limited to its purpose and not permitted to routinely and unnecessarily expand into needless exposure of superfluous matters and information that are personal to the witness and have no real relevancy to his or her credibility." *Primm v. Isaac*, 127 S.W.3d 630, 639 (Ky. 2004). Courts that have considered this type of request in the context of an expert's financial records recognize that "[d]iscovery was never intended to be used as a tactical tool to harass an adversary in a manner that actually chills the availability of information by non-party witnesses," and that such discovery "could cause future trials to consist of many days of questioning on the collateral issue of expert bias rather than on the true issues of liability and damages." *Elkins v. Syken*, 672 So. 2d. 517, 521-22 (Fla. 1996) (affirming district court's rejection of argument that discovery of expert witnesses' "tax returns and other related documents" was "necessary to attack the credibility of these witnesses"); *see also Am. Fam. Mut. Ins. Co. v. Grant*, 217 P.3d 1212, 1219 (Ariz. Ct. App. 2009) (stating that "[l]itigants can invariably identify

additional discovery that might, in some incremental way, bolster a bias-related attack. There must, however, be some limit, lest civil discovery devolve into a war of attrition and deter qualified experts who might otherwise provide valuable assistance to the trier of fact."); *see also In re Ford Motor Co.*, 427 S.W.3d 396, 397 (Tex. 2014) (vacating state court discovery order allowing depositions of retained experts' employers sought to explore experts' potential bias).

Recognizing these principles, New Mexico's federal court held that, while Dr. Bain must testify regarding "the percentage of expert testimony he has performed for defendants and for plaintiffs" and the "percentage of his income derived from being retained as an expert," he was ***not*** required "to provide financial information about BRC." *Chavez v. Marten Transp., Ltd.*, CIV. 10-0004 MV/KBM, 2011 WL 13112997, at *2 (D.N.M. Aug. 15, 2011).[5] A Tennessee federal court in *Campos v. MTD Products, Inc.* reached the same conclusion. No. 2-07-0029, 2009 WL 920337, at *5 (M.D. Tenn. Apr. 1, 2009) (concluding that demand for discovery of expert's and BRC's financial records was "overkill" and precluding such discovery).

Here, Dr. Bain already testified regarding the scope of discovery permitted under *Chavez* and *Campos*. Dr. Bain testified about his business relationship with BRC, including his percentage of shares, when he became a shareholder, and how his income is distributed. (**Ex. 1**, 9:14-25; 11:25-12:17.) He also testified regarding his hourly rate for expert work, the percentage of his income derived from being retained as an expert, whether he earns commissions or bonuses, and the nature of work he has done on behalf of plaintiffs and defendants. (*Id.* at 15:9-16; 108:4-109:4;

---

[5] Plaintiff, on page 2 above, misquotes *Chavez*, which specifically held that Dr. Bain was ***not*** required "to provide financial information about BRC, nor . . . his personal tax or other financial information." *Id.*

109:23-110:25.) To the extent Plaintiff wishes to argue that Dr. Bain is somehow biased because of his relationship to BRC, he has already developed evidence with which to present that argument. Information concerning BRC's shareholders is unnecessary and not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Further, Plaintiff cannot demonstrate that the list of names of BRC's ownership itself is relevant to Dr. Bain's credibility. Such discovery would not indicate whether the individuals are associated with Dr. Bain or any entity that could in theory support an inference of bias. Allowing this discovery would inevitably lead Plaintiff to seek additional discovery about each listed individual to determine, for instance, where the individual is employed, when he or she became a shareholder, what his or her role on the board of directors is, and more. Because a list itself would be useless without significant further discovery that itself is not even arguably permissible, the Court should not reopen Dr. Bain's deposition.

Third, Plaintiff cannot overcome the non-party shareholders' privacy interests in their business relationship with BRC, which, as a privately-held corporation, does not make its confidential corporate information publically available. To overcome those individuals' right to privacy, Plaintiff must "first prove that the information requested is relevant to the subject of the action." *See In re Dist. Court, City & Cty. of Denver*, 256 P.3d 687, 691-92 (Colo. 2011) (discussing "comprehensive framework" for courts to apply "to all discovery requests implicating the right to privacy").[6] As explained above, this information is not relevant to any claim or defense in this case

---

[6] Because there is "no bright-line federal rule that instructs the Court as to the treatment of confidential financial information," this Court may "consider any relevant state doctrines of confidentiality." *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 554 (D. Colo. 2009).

or to Dr. Bain's credibility. This ends the analysis. But even if "the information requested is relevant," Plaintiff "must prove . . . that there is a compelling need for the information." *Id.* Plaintiff cannot do so here, where Dr. Bain already testified to facts probative of potential bias and no compelling need exists for a list of names of individuals not involved in this case. Finally, Plaintiff must "show that the information is not available from other sources" and, if it is, that he "is using the least intrusive means to obtain the information." *Id.* Indeed, Plaintiff could have asked Dr. Bain whether BRC is owned by any insurance companies or insurance lawyers, but he chose not to.

Last, there is no principle of law—and Plaintiff cites none—that requires Dr. Bain to divulge irrelevant, confidential information at his deposition. Under Rule 30(d), objections "made during a deposition . . . should be limited to those that under Rule 32(d)(3) might be waived if not made at that time, *i.e.,* objections on grounds that might be immediately obviated, removed, or cured." Advisory Committee Notes, Fed. R. Civ. P. 30(d); *see also AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-2003-JAR-KGG, 2016 WL 141629, at *3 (D. Kan. Jan. 12, 2016) ("objections which need not be made to preserve the objection under Rule 32 should not be made in a discovery deposition"). Objections to relevancy during a discovery deposition are generally improper, and can serve as grounds for sanctions. *See id.* at *4; Fed. R. Civ. P. 32(d)(3)(A).[7]

In this action, Plaintiff has repeatedly pursued burdensome and improper expert discovery. Plaintiff's failure to even ask Dr. Bain at deposition the questions he now claims make this evidence relevant, *i.e.*, whether BRC is owned by individuals involved in the insurance industry,

---

[7] As shown in the attached transcript, Auto-Owners appropriately objected to the form of Plaintiff's repeated questioning of Dr. Bain on these topics. (**Ex. 1**, 10:19; 11:4-6.)

further demonstrates Plaintiff is pursuing discovery designed to harass and annoy Auto-Owners' expert witnesses. Plaintiff's request to reopen Dr. Bain's deposition should be denied.

Respectfully submitted this 27th day of August, 2020.

FRANKLIN D. AZAR & ASSOCIATES, P.C.

| | |
|---|---|
| *s/ Elisabeth L. Owen* | *s/ Hannah R. Seifert* |
| Anna N. Martinez | Evan B. Stephenson |
| Elisabeth L. Owen | Hannah R. Seifert |
| 14426 East Evans Avenue | Wheeler Trigg O'Donnell LLP |
| Aurora, CO 80014 | 370 Seventeenth Street, Suite 4500 |
| Phone Number: (303) 757-3300 | Denver, CO 80202-5647 |
| Fax Number: (303) 759-5203 | Telephone: 303.244.1800 |
| E-Mail: martineza@fdazar.com | Facsimile: 303.244.1879 |
| owenl@fdazar.com | Email: stephenson@wtotrial.com |
| | seifert@wtotrial.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendant Auto-Owners Insurance Company* |