IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-3116-WJM-SKC

ALBERT PERRY,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY, a foreign corporation,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S AMENDED MOTION TO EXCLUDE TESTIMONY OF DOUGLAS WONG, MD**

---

In this insurance action, Plaintiff Albert Perry sues Defendant Auto-Owners Insurance Company for breach of his insurance policy, unreasonable delay and/or denial of insurance benefits, and common law bad faith, resulting from his October 23, 2014 motor vehicle accident. (ECF 6.)

Before the Court are Defendant's Motion for Summary Judgment ("Motion for Summary Judgment") (ECF No. 51) and Defendant's Amended Motion to Exclude Testimony of Douglas Wong, MD ("702 Motion") (ECF No. 53). For the reasons stated below, both motions are granted.

# I. BACKGROUND[1]

Defendant issued insurance policy number 49-567-621-00, effective August 24, 2014 to August 24, 2015 (the "Policy"), to Albert's Water & Wastewater Specialists, Inc. (ECF No. 51 ¶ 1.)  At all relevant times to the litigation, Plaintiff was an employee of Albert's Water & Wastewater Specialists, Inc.  (ECF No. 51-6 at 1.)

The Uninsured Motorist Coverage portion of the Policy provides:

2. COVERAGE

> a. We will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an uninsured automobile[2] because of bodily injury sustained by an injured person while occupying an automobile that is covered by SECTION II – LIABILITY COVERAGE of the policy.
>
> . . .
>
> e. With regard to an underinsured automobile, there is no coverage under this endorsement until the limits of liability of all bodily injury liability bonds and insurance policies applying to the underinsured automobile and its operator have been exhausted by payment of judgments or settlements.

. . .

4. LIMIT OF LIABILITY

> a. The limit of our liability for Uninsured Motorist Coverage in any one occurrence shall be as follows:
>
>> (1) Our payment to any one injured person shall

---

[1] The following factual summary is based on the parties' briefs on Motion for Summary Judgment, and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Under the terms of the Policy, an "uninsured automobile" includes an underinsured automobile.  (ECF No. 51-1 at 20.)

> > not exceed the smallest of the following:
>
> > > (a) the "each person" limit of liability stated in the Declarations for Uninsured Motorist Coverage; or
> > >
> > > (b) the amount of compensatory damages, including but not limited to loss of consortium, sustained in excess of legal liability coverage.
> >
> > . . .
> >
> > c. We shall not pay any amounts which duplicate payments for the same elements of loss for which the injured person has received or will receive payments.

(*Id.* ¶ 2; ECF No. 51-1 at 20–21.)

On or about October 23, 2014, Plaintiff's motor vehicle was rear-ended by a motor vehicle driven by Thomas Headrick. (ECF No. 6; ECF No. 51-3 at 1.) Following the motor vehicle accident, Plaintiff received "treatment of injections, radiographic imaging[,] as well as physical therapy and surgeries on his neck, anterior cervical discectomy and fusion CS-6, C6-7 on February 23, 2017 as well as the L4-5 decompression osteotomy fusion surgery on August 24, 2017." (ECF No. 51-13 at 4.)

Plaintiff submitted a demand for underinsured motorist benefits on July 3, 2017, which included, *inter alia*, $141,629.97 of medical expenses reported by Plaintiff. (ECF No. 51 at 3 ¶ 4; ECF No. 51-3.)

Headrick's insurer accepted liability for the underlying claim, and Defendant provided consent for Plaintiff to settle with Headrick's insurer for the policy limit of $250,000. (ECF No. 51-6 at 1.) On June 26, 2018, Plaintiff settled his claim against Headrick for $245,000, less than Mr. Hendrick's $250,000 policy limits. (ECF No. 51 at 3 ¶ 3; ECF No. 51-2.)

3

On July 16, 2019, Defendant issued its coverage decision, which cited the opinions of its retained experts, Dr. Marjorie Eskay-Auerbach and Dr. Charles E. Bain, and concluded that, at most, Plaintiff's accident-related expenses were $23,671.03. (ECF No. 51-6 at 5.) Defendant wrote:

> Dr. Eskay-Auerbach opines that Mr. Perry's treatment provided by Emergency Services, St. Anthony's [Emergency Room], Concentra Medical Center, and Lakewood Injury Treatment Center was reasonable as it relates to the Accident. However, she opines that the bi-level cervical fusion operation performed by Dr. Wong on February 23, 2017 is unrelated to the Accident, as are Mr. Perry's epidural steroid injections and facet injections. Further, Dr. Eskay-Auerbach opines that any prospective decompression and fusion for spinal stenosis and degenerative spondylolisthesis at L4-5 would be unrelated to the Accident. Similarly, Dr. Bain opines that the injuries suffered by Mr. Perry as a result of the Accident would have been mild muscle strains that would resolve quickly and any symptoms that he had after the Accident would have abated within days to weeks. Dr. Bain further opines that none of Mr. Perry's medical care beyond several weeks of the Accident is causally related to the Accident.

(*Id.* at 3–4.) Based on the opinions of Dr. Eskay-Auerbach and Dr. Bain, Defendant concluded:

> [Plaintiff's] non-economic damages are likely $30,000.00 or less, and his total economic and non-economic [damages] do not exceed the tortfeasor's underlying policy limits of $250,000.00. Because Mr. Perry's damages do not exceed $250,000.00, UM/UIM benefits are not triggered and Mr. Perry is not entitled to these benefits. Thus, it is [Defendant's] position that at this time Mr. Perry has, through payment of the tortfeasor's policy limits, already been fully compensated for his damages casually linked to the Accident and no UM/UIM benefits are owed.

(*Id.* at 5.)[3]

---

[3] Plaintiff asserts that in total, he incurred $304,914.32 of medical expenses and $74,047.59 of lost wages arising from the October 23, 2014 collision. (ECF No. 64 at 7 ¶¶ 9–

4

Plaintiff initiated this action in the District Court, City and County of Denver on October 3, 2019, and Defendant removed this action to federal court on November 1, 2019. (ECF Nos. 1, 6.) Plaintiff asserts the following claims: (1) breach of contract (¶¶ 55–59)[4]; (2) unreasonable delay or denial of underinsured motorist benefits in violation of Colorado Revised Statute § 10-3-1116[5] (¶¶ 60–63); and (3) common law bad faith (¶¶ 64–69).

On October 29, 2020, Defendant filed the Motion for Summary Judgment. (ECF No. 51.) On November 2, 2020, Defendant filed the 702 Motion. (ECF No. 53.) Plaintiff responded to both motions on December 3, 2020 (ECF Nos. 62, 64), and Defendant replied on December 17, 2020 (ECF No. 68, 69).

This matter is set for a 5-day jury trial beginning on October 18, 2021 in Courtroom A801 and a Final Trial Preparation Conference on October 1, 2021. (ECF No. 72.)

---

10.) He further contends that Defendant subsequently evaluated Plaintiff's claim on August 7, 2018 and concluded that Plaintiff had medical expenses of $158,502.01 and that the $250,000 bodily injury limit from Headrick was sufficient to compensate Plaintiff as of that date for his injuries, losses, and damages. (*Id.* at 7–8 ¶¶ 12–13.) However, Plaintiff did not provide the Court with the exhibits that he contends provide support for these assertions.

[4] Citations to (¶ __), without more, are references to the Complaint. (ECF No. 6.)

[5] Plaintiff brings his statutory claim under Colorado Revised Statutes § 10-3-1116, which is the section providing for "Remedies for unreasonable delay or denial of benefits--required contract provision--frivolous actions--severability--rules." (¶¶ 60–63.) However, Colorado Revised Statutes § 10-3-1115 is the provision which prohibits "unreasonabl[e] delay or den[ial] [of] payment of a claim for benefits owed to or on behalf of any first-party claimant." Thus, the Court will analyze case law pertaining to the latter section in addressing the viability of these claims later in this Order.

## II. 702 Motion

### A. Standard of Review

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Expert opinion testimony is admissible if it is relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 594–95 (1993). The opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Id.* The proponent of expert testimony has the burden to show that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

### B. Analysis

On July 1, 2020, Plaintiff endorsed Douglas Wong, M.D., as a retained medical expert under Federal Rule of Civil Procedure 26(a)(2)(B) to testify that "to a reasonable degree of medical probability, the injury to [Plaintiff's] spine that necessitated surgical repair was more likely than not caused by the collision of October 23, 2014."[6] (ECF No. 53-2 at 8.)

Pursuant to Rule 702, Defendant seeks to exclude Dr. Wong's medical causation opinion. (ECF No. 53.) Defendant argues that Dr. Wong's medical causation opinion testimony is unreliable for two reasons: (1) his expert report contains no analysis of general causation or citations to any medical literature or studies to support general

---

[6] Dr. Wong is also one of Plaintiff's treating providers, but Dr. Wong admits that he did not form opinions regarding medical causation while treating Plaintiff. (ECF No. 53-1 at 4.)

causation; and (2) his methodology for determining specific causation rests on Plaintiff's reports of pain after the October 23, 2014 accident. (*Id.* at 2.) The Court analyzes each of Defendant's arguments below.

1. <u>Causation Requirements</u>

Establishing injury causation requires a showing of both general and specific causation. *Basanti v. Metcalf*, 35 F. Supp. 3d 1337, 1344 (D. Colo. 2014) (citing *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005)). "Specific causation" refers to whether a particular accident caused the specific injury at issue. *Id.* "General causation" refers to whether the accident in question is, in the abstract, capable of producing the type of injury suffered. *Id.* General causation may be established by such things as epidemiological evidence, *id.*, but an expert is not required to cite published studies "in order to reliably conclude that a particular object caused a particular illness," *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1211 (10th Cir. 2002) (citing *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000)).

2. <u>Specific Causation Analysis</u>

Defendant argues that Dr. Wong's opinions as to specific causation must be excluded on the basis that his methodology is unreliable because it rests exclusively on the fact that Plaintiff's symptoms occurred after his October 23, 2014 motor vehicle accident. (ECF No. 53 at 7.) He cites *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003), for the proposition that a court is not permitted to rely on the temporal relationship alone for evidence of causation. *See also Owners Ins. Co. v. Stahl*, 2019 WL 6682833, at *4 (D. Colo. Dec. 5, 2019) ("Although the pain in [defendant's] neck allegedly developed relatively soon after the car accident, the close proximity between the accident and [defendant's] pain does not necessarily mean that

7

the accident caused [defendant's] injuries."); *Dillon v. Auto-Owners Ins. Co.*, 2016 WL 943775, at *4 (D. Colo. March 14, 2016) (finding expert opinion based solely on a temporal connection unreliable); *In re Breast Implant Litig.*, 11 F. Supp. 2d 1217, 1232 (D. Colo. 1998) (describing that a "temporal relationship by itself, provides no evidence of causation").

In response, Plaintiff argues that Dr. Wong did not only consider the temporal relationship between the motor vehicle accident and Plaintiff's injuries; to the contrary, he argues that both general and specific causation may be informed by differential diagnosis, which is "the process by which a physician rules out the least plausible cases of injury until the most likely cause remains."  (ECF No. 62 at 5 (citing *Hollander*, 289 F.3d at 1209).)  According to Plaintiff, "Dr. Wong considered a variety of criteria to conduct his differential diagnosis and to arrive at his conclusion that Mr. Perry's symptomology that necessitated two spine surgeries was caused by the 2014 collision," including a "focused examination of the spine, a medical history, and [a] review[ of] diagnostic studies to rule out other causes of injury and pain symptoms (*i.e.*, tumor in the spine)."  (*Id.* at 9.)

While a differential diagnosis may be a valid specific causation opinion under certain circumstances, the notion that Dr. Wong conducted a reliable differential diagnosis in this case is contradicted by the record, including Dr. Wong's expert report and his deposition testimony.[7]  For example, while Plaintiff asserts that Dr. Wong

---

[7] The only reference to "differential diagnosis" that the undersigned located in the record is the following exchange during Dr. Wong's deposition.  (*See* ECF No. 53-1 at 15 ("Q: During the course of your education and training as a spinal surgeon, were you trained on the method of differential diagnosis?  A: Differential diagnoses of, you know, different causes of pain, the answer is yes.").)  This exchange does not suggest that Dr. Wong actually utilized a differential diagnosis in his analysis of Plaintiff.

"reviewed diagnostic studies to rule out other causes of injury and pain symptoms (*i.e.*, tumor in the spine)" (ECF No. 62 at 9 (citing "Exhibit 4 at 51:3–23"[8])), the portion of Dr. Wong's transcript that Plaintiff cites does not reflect that Dr. Wong ruled out any other causes of Plaintiff's injuries:

> Q. Okay.  And so to back up, your opinion that Mr. Perry's condition is related to the 2014 accident is based on the subjective complaints of pain, clumsiness, weakness and numbness; is that right?
>
> A. Correct.
>
> Q. And it's not based on objective findings, correct?
>
> A. The objective finding is with this physical exam test, if a patient looks up, you actually compress the spinal cord more; they complain of numbness.  So is there a physical objective finding?  The answer is no.  But if -- I guess the answer is it's, like, if I poke somebody in the finger with a needle, and they go, Ouch, is that an objective test or a subjective test?
>
> Well, it's subjective because they complain of – it's ouch, but you're actually causing pain.  So the closest thing that I can have of an objective symptom is when a patient looks up, that his hands go numb.

(ECF No. 64-3 at 4.)[9]

Plaintiff further argues that "based on the clinical presentation, findings on examination, medical history, and MRI, [Dr. Wong] did not believe that there was a more probable explanation for the pain symptoms Mr. Perry experienced when he presented

---

[8] Unhelpfully, Plaintiff did not include page 51 of Dr. Wong's deposition transcript in Exhibit 4.  (*See* ECF No. 62-4.)  However, the Court has found the relevant page from the materials cited in connection with Plaintiff's response to the Motion for Summary Judgment. (*See* ECF No. 64-3 at 4.)

[9] A review of the index for Dr. Wong's deposition further contradicts Plaintiff's assertion that during his deposition, Dr. Wong discussed that he attempted to rule out the possibility that

for surgical evaluation other than the crash of October 23, 2014." (ECF No. 62 at 7.) Critically, however, the portion of Dr. Wong's deposition testimony that Plaintiff cites does not identify: (1) any other possible causes of Plaintiff's injuries that Dr. Wong analyzed or eliminated from consideration; or (2) how Plaintiff derived his causation conclusions:

> Q: Do you believe that there's another more likely or more probable explanation for the symptoms Mr. Perry demonstrated other than the crash that occurred in 2014?
>
> . . .
>
> A: I don't see anything on the records that were given me nor that was stated by the patient that there appears to be any other injury -- significant injury other than that motor vehicle accident in 2014.

(ECF No. 62 (citing ECF No. 62-4 at 7–8).) As such, the Court concludes that Plaintiff has failed to establish that Dr. Wong "perform[ed] a reliable differential diagnosis through which, to a reasonable degree of medical certainty, all other possible causes of the [Plaintiff's] condition can be eliminated, leaving only [the October 23, 2014] motor vehicle as the cause." *Hollander*, 289 F.3d at 1211–12 (quoting *Turner*, 229 F.3d at 1209).

To the contrary, Dr. Wong repeatedly confirmed during his deposition that he based his causation analysis on Plaintiff's symptoms after the accident:

> Q: . . . is it only Mr. Perry's symptoms that he had after the 2014 accident that forms your basis for the causation opinion?
>
> A: At this point, yes.

---

Plaintiff's pain symptoms were caused by a tumor in his spine. (*See* ECF No. 68-1 at 4 (the term "tumor" does not appear in the index).)

10

> . . .
>
> Q: So can you tell me each of the steps that goes into your methodology for forming that opinion.
>
> A: So it's specifically the spine. I look at if this was due to a motor vehicle accident or any sort of accident, is there something that I can determine that radiographically most patients would not have unless they were in that accident.
>
> Example, I was on a roof, I fell off the roof, I broke my back. Radiographically, most patients don't have a broken back or a compression fracture. And if they fall off a roof, My back hurts, I've got a compression fracture, then, to me, the fracture -- or the fall caused that.
>
> So if we're not talking about anything radiographic, meaning that we're talking about degenerative changes which can exist in anybody, but it be -- essentially be asymptomatic, then I basically ask the patient, Were you being treated or did you have any back pain or spine symptoms prior to the motor vehicle accident? And if they, say, No, haven't had any treatments, was doing fine, got in an accident, and the symptoms occurred after that and directly after that, then I would say the causation of the patient's symptoms were [*sic*] due to the accident.
>
> Q: And the second scenario that you describe there in terms of not having radiographical evidence of causation -- the second scenario, is that the scenario that you followed to determine the causation of Mr. Perry's injuries?
>
> A: Yes, it is.
>
> . . .
>
> Q: So would you agree with me that your medical causation opinion is based entirely on what Mr. Perry told you?
>
> A: Correct. I have no reason for him to – to lie or to give false – falsehoods.

(ECF No. 53-1 at 3, 5–7.) He further testified:

> Q: Are there any objective findings that indicate Mr. Perry's condition is related to the 2014 accident?

> A: Other than his symptoms for pain and – let's see. I believe his symptoms of pain as well as, you know, weakness and clumsiness in his legs and that his hands go numb. And these symptoms, I believe, have started or occurred after the motor vehicle accident [in] 2014.

(ECF No. 62-4 at 2–3.)

Thus, contrary to Plaintiff's post-hoc rationalizations, Dr. Wong's deposition testimony demonstrates that he based his causal analysis on the temporal connection between the October 23, 2014 accident and Plaintiff's injuries. Such methodology is insufficient to constitute a reliable opinion as to specific causation.

      3.     <u>General Causation Analysis</u>

Defendant further argues that "Dr. Wong has no admissible opinion regarding general causation" because his expert report "contains no analysis of general causation or citation to any medical literature or studies to support general causation." (ECF No. 53 at 5–6.) For support, Defendant points to the following exchange during Dr. Wong's deposition:

> Q: Are you aware of any medical literature showing that rear-end crashes can cause injury to the spine, such as the pain that presented in Mr. Perry's case or other things like herniations, facet injuries, or radiculopathy?
>
> A: Yes, motor vehicle accidents can cause pain and -- yes, after motor vehicle accidents, correct.
>
> Q: Is there medical literature that also demonstrates this patient population?
>
> A: Not that I am aware of -- there very well could be, but I'm not really looking at literature with regards to pain for motor vehicle accidents.

12

(ECF No. 53-1 at 15–16.)  According to Defendant, Plaintiff has failed to demonstrate that Plaintiff's October 23, 2014 accident was capable of causing Plaintiff's symptoms based on reliable sources and scientifically valid methodology.  (*Id.*)

Plaintiff responds that Dr. Wong's differential diagnostic review informs his general causation analysis.  (ECF No. 62 at 7.)  However, as stated above, Plaintiff has failed to establish that Dr. Wong conducted a reliable differential diagnostic review of Plaintiff's injuries by ruling out other potential causes.  Moreover, Plaintiff's argument fails because a differential diagnosis analysis does not speak to the issue of general causation.  As another judge in the District of Colorado recognized in *In re Breast Implant Litigation*,

> differential diagnosis does not by itself *prove* the cause, even for the particular patient.  Nor can the[ ] technique speak to the issue of general causation.  Indeed, differential diagnosis *assumes* that general causation has been proven for the list of possible causes it eliminates:
>
> The process of differential diagnosis is undoubtedly important to the question of "specific causation."  If other possible causes of an injury cannot be ruled out, or at least the probability of their contribution to causation minimized, then the "more likely than not" threshold for proving causation may not be met.  *But, it is also important to recognize that a fundamental assumption underlying this method is that the final, suspected "cause" remaining after this process of elimination must actually be capable of causing the injury.*  That is, the expert must "rule in" the suspected cause as well as "rule out" other possible causes.  And, of course, expert opinion on this issue of "general causation" must be derived from a scientifically valid methodology.
>
> . . .
>
> In short, a single differential diagnosis is a scientifically invalid methodology" for the purpose of demonstrating general causation.

13

11 F. Supp. 2d at 1229–30 (quoting *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1414 (D. Or. 1996)). Plaintiff does not cite any binding cases in which courts have approved the use of differential diagnosis to establish general causation. *Cf. Goebel*, 346 F.3d at 999 (recognizing that a court "can admit a differential diagnosis that it concludes is reliable *if general causation has been established*" (emphasis added)). As such, this argument is unavailing.

Plaintiff further argues that "Dr. Wong expressly stated his opinion that the 2014 motor vehicle collision Mr. Perry is involved in is capable of causing the symptoms that Mr. Perry suffered, and that necessitated the surgeries Dr. Wong performed." (ECF No. 62 at 8.) For support, Plaintiff cites the following exchange from Dr. Wong's deposition:

> Q: Is there a link between the crash of 2014 and the spinal pain symptoms demonstrated by Mr. Perry?
>
> . . .
>
> A: Can patients have pain after a motor vehicle accident? The answer is, yes, yes, they can.

(ECF No. 62 at 8; ECF No. 53-1 at 15.) However, the mere conclusion that an individual *can* have pain after a motor vehicle accident is far from a medical determination that a motor vehicle collision like the one that Plaintiff suffered on October 23, 2014 is capable of causing his symptoms and injuries.[10]

---

[10] Plaintiff's citations to *Hollander* are also unavailing. *Hollander* recognizes that "a medical expert [need not] always cite published studies on general causation to reliably conclude that a particular object caused a particular illness," reasoning that "[t]he first several victims of a new toxic tort should not be barred form having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed." 289 F.3d at 1211 (quoting *Turner*, 229 F.3d at 1209). Here, however, there is no suggestion that the medical literature regarding automobile accidents has not yet been completed or that Plaintiff is suffering from any type of novel injury.

As such, the Court concludes that Plaintiff has failed to establish that Dr. Wong's opinions regarding general causation is reliable.

\* \* \* \*

Based on the Court's conclusions that Dr. Wong's opinions regarding specific and general causation are not reliable, the 702 Motion is granted, and Dr. Wong's opinions regarding causation are excluded.

## III. MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

**B.     Analysis**

　　1.     Breach of Contract Claim

In a personal injury action, a "plaintiff carries the burden to establish the nature and extent of his injuries, along with the damages to which he is entitled." *Bautista v. MVT Servs., LLC*, 2017 WL 2082925, at *10 (D. Colo. March 20, 2017) (citing *Murray v. Newmyer*, 182 P. 888, 889 (Colo. 1919)).  Expert testimony is required "[w]hen the subject matter of proffered testimony constitutes scientific, technical, or other specialized knowledge." *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011).  Expert testimony on medical causation is required to establish a causal link between complex injuries and the alleged origins of those injuries.  *See Zartner v. Miller*, 760 F. App'x 558, 563–64 (10th Cir. 2019) (recognizing that "when an injury lacks an obvious origin and multiple causes are possible, expert medical testimony is necessary to prove causation between a use of force and an injury").

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not provided causation evidence, which requires admissible expert medical testimony.  (ECF No. 51 at 7–8.)  According to Defendant because Plaintiff "has no admissible expert testimony to prove medical causation," he "cannot prove that his accident-related damages exceed $250,000 and he therefore cannot trigger UIM coverage."  (*Id.* at 8.)

Plaintiff responds that he has endorsed Dr. Wong "to opine that [the] two surgeries he performed on Plaintiff post-collision were medically necessary in relation to injuries Plaintiff sustained in the collision," which creates admissible expert evidence showing that the October 23, 2014 motor vehicle accident caused the injury damages he claims exceed Headrick's $250,000 limit of liability insurance.  (ECF No. 64 at 9.)

Under Rule 702, expert testimony is required "[w]hen the subject matter of proffered testimony constitutes scientific, technical, or other specialized knowledge." Courts consistently require expert medical testimony to establish a causal link between complex injuries and the alleged origins of those injuries.  *Zartner*, 760 F. App'x at 563–64 (concluding that "when an injury lacks an obvious origin and multiple causes are possible, expert medical testimony is necessary to prove causation between a use of force and an injury."); *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1957) (explaining that "where injuries complained of are of such character to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts").

Moreover, summary judgment is appropriate in cases of complex medical causation when a party cannot provide expert medical testimony to prove his claims. *See Harvey v. United States*, 685 F.3d 939, 952 (10th Cir. 2012) (finding that plaintiff's "failure to provide expert evidence doomed both his misdiagnosis and surgical malpractice claims"); *Stahl*, 2019 WL 6682833, at *5 (granting summary judgment in favor of insurance company after court precluded plaintiff's medical experts "because [plaintiff] cannot prove that the car accident caused his claimed damages in excess of $50,000"); *Mathison v. United States*, 2015 WL 854476, at *3 (D. Colo. Feb. 26, 2015) (granting summary judgment because "plaintiff cannot cure a lack of medical evidence of causation" with evidence to support temporal proximity).

The need for expert testimony regarding causation is particularly acute in this case because Plaintiff was previously treated for neck and back pain in connection to a 2006 motor vehicle accident, and the parties dispute whether, and to what extent, Plaintiff's injuries were solely caused by the October 23, 2014 accident.  (*See* ECF No.

51 at 4–5 ¶¶ 8–12; ECF No. 51-13 at 1; ECF No. 62 at 6 ¶ 1.) *See Zartner*, 760 F. App'x at 564 ("Given the two separate uses of force that could have caused the [injuries in question], causation entails a medical question beyond a layperson's ordinary experience.").

As explained above, the Court has now excluded Dr. Wong's expert opinions regarding causation. Without a causation expert, Plaintiff has not established that the October 23, 2014 motor vehicle accident caused Plaintiff any damages that are in excess of Headrick's legal liability coverage limit such that he is entitled to UIM benefits.[11] The Court therefore finds that Defendant is entitled to summary judgment as to the breach of contract claim.[12]

### 2. Statutory and Common Law Bad Faith Claims

An insurer breaches its statutory duty under Colorado Revised Statutes § 10-3-1115 if there "was no reasonable basis to delay or deny the claim for benefits." *Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 974 (Colo. App. 2011); Colo. Rev. Stat. § 10-3-1115(2) (stating "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action"). Likewise, to establish a common law bad faith claim under Colorado law, an insured must establish "proof of unreasonable conduct and knowledge that the conduct is unreasonable or a reckless disregard of the fact that the

---

[11] Plaintiff does not argue that the opinions from his other expert, Dr. Samuel Chan, create a material disputed issue of fact regarding causation. (*See generally* ECF No. 64.) At any rate, the Court notes that Dr. Chan opined that it was likely that the 2014 accident did not cause Plaintiff's disk protrusions, and he deferred to Dr. Wong's assessment regarding causation and relatedness of Plaintiff's treatment for his neck and back injuries. (*See* ECF No. 51 at 6 ¶¶ 16–17; ECF No. 51-4 at 5, 11.)

[12] Because the Court bases its ruling on Plaintiff's breach of contract claim on Plaintiff's failure to present admissible medical causation evidence, the Court need not address

conduct is unreasonable." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985) (en banc).

Defendant argues that because Plaintiff cannot prove he is legally entitled to UIM benefits, his extra-contractual claims fail as a matter of law. (ECF No. 51 at 14.) The Court agrees.

As discussed above, because he has not provided admissible medical expert to establish causation, Plaintiff has failed to carry his burden at summary judgment to demonstrate that Defendant owed benefits to him and as a result breached the insurance contract. Because both the common law and statutory bad faith claims are predicated on the insurer unreasonably delaying or denying benefits and are derivative of Plaintiff's failed breach of contract claim, they also cannot survive summary judgment. *See Stahl*, 2019 WL 6682833, at *5 (granting summary judgment on bad faith claims after plaintiff failed to present evidence of a causal link between the accident and plaintiff's injuries); *Johnson v. Am. Nat'l Prop. & Cas. Cos.*, 2019 WL 463026, at * 5 (D. Colo. Feb. 6, 2019) (dismissing statutory and common law bad faith claims predicated on the insurer unreasonably delaying or denying benefits after plaintiffs failed to demonstrate that they were owed benefits under their insurance policy); *Tynan's Nissan Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321 (Colo. App. 1995) (recognizing that where a policy provides no coverage, an insurer cannot be held liable on a theory of bad faith refusal to pay).

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 51) is GRANTED;

---

Defendant's other arguments about the breach of contract claim. (*See* ECF No. 51 at 12–14.)

2. Defendant's Amended Motion to Exclude Testimony of Douglas Wong, M.D. (ECF No. 53) is GRANTED;

3. The Clerk shall enter judgment in favor of Defendant Auto-Owners Insurance Company and against Plaintiff Albert Perry and shall terminate this case; and

4. Defendant shall have its costs, if any, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 7th day of September, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge